UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HELEN MONROE, Administrator of the
Estate of REGINA ROMERO, Deceased,
Plaintiff,

v.

UNITED STATES OF AMERICA and
MELISSA GILLIAM, M.D.,
Defendants.

No. 04 C 7358
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Regina Romero died as a result of a mistake during surgery at the Westside Medical Center, a Veteran's Administration (VA) hospital. The administrator of her estate, Helen Monroe, has filed suit under the Federal Tort Claims Act ("FTCA") against the United States and Dr. Gilliam. Dr. Gilliam has now filed a motion to dismiss the claims against her based on the statute of limitations, among other things. For the reasons below, Dr. Gilliam's motion is granted/denied.

## FACTS

Dr. Gilliam, a VA employee, performed a cervical biopsy on Regina Romero at the VA hospital. The procedure perforated the uterine wall, causing bleeding, which led to application of a solution intended to control the bleeding. The solution entered the abdominal cavity causing, in turn, peritonitis and bowel perforations. This damage had to be repaired by a bowel resection. Dr. Gilliam failed to reconnect the bowel after the damaged portion was removed. This condition was not detected and treated, and Regina Romero died. Dr. Gilliam, an independent contractor, assisted in the operation.

According to the complaint, VA officials, including Dr. Gilliam, met with Ms. Romero's family after her initial treatment. During those meetings and other conversations, Dr. Gilliam's assistant stated to the family that if they submitted a claim under the Federal Tort Claims Act, they would be compensated by the United States for injuries caused by Dr. Gilliam's treatment of Regina Romero. Dr. Gilliam knew of and approved of the representations made, and Plaintiff (the administrator of the decedent's estate) relied on those representations, *inter alia*, in granting the VA's numerous requests for more time to investigate and attempt to settle this case during the administrative claim process. Plaintiff argues that she was not informed of the United States' claim that Dr. Gilliam was an independent contractor until 2005, and that the affirmative representations were designed and intended to conceal a separate cause of action against Dr. Gilliam.

**STANDARD**

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant Defendants' motion only if Plaintiff cannot prove any set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing Defendants' motion, I must construe all allegations in the claims in the light most favorable to Plaintiff and accept all well-pleaded facts and allegations as true. *See Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). I may only grant Defendants' motion if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## ANALYSIS

Dr. Gilliam is seeking dismissal based on the grounds of statutes of limitation and repose. The alleged malpractice occurred between July and September of 2001. Romero's death occurred on September 5th. Dr. Gilliam was sued – named as an additional defendant – on October 25, 2005, which was past the allowable time for such a suit. *See* 735 ILCS 5/13-212 ("in no event shall such action be brought more than 4 years after the date on which occurred the act or omission"). To avoid dismissal on timeliness grounds, Plaintiff alleged fraudulent concealment of the malpractice. If the fraudulent concealment occurred, it would toll the counting of time against Plaintiff. 735 ILCS 5/13-215 (where the defendant "fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced . . . within 5 years after the person . . . discovers that he or she has such cause of action . . . .").

In order to invoke fraudulent concealment, the "cause of action" must be concealed, not the identity of the tortfeasor. *Guebard v. Jabaay*, 381 N.E.2d 1164, 1167-68 (Ill. App. Ct. 1978). *Guebard* is a seminal case in Illinois. The Court considered the laws of other jurisdictions and found that the rule, while sometimes harsh, is consistent with Illinois case law for the past 100 years and with other State's decisions. In *Guebard*, the plaintiff had two bad knee surgeries and sued her doctor and clinic. In discovery, after four years had passed, the plaintiff learned that the first surgery had been performed by another physician. Guebard attempted to add that physician and alleged that her doctor had falsely indicated in medical records and insurance filings that he had performed the first surgery and had so stated to her. Since the cause of action was known to the plaintiff, the concealment of the identity of the surgeon did not toll the period of limitation or

Page 3 of 8

repose.

Plaintiff instead relies heavily on *Hauk v. Reyes*, 616 N.E.2d 358 (Ill. App. Ct. 1993), but those circumstances were different. In *Hauk*, the plaintiff pleaded that Reyes had initially prepared a report saying the x-ray was negative. This led Hauk's doctors away from the appropriate treatment. Then, after the injury, Reyes prepared a new report identifying the fracture and backdated it. The concealment alleged against Reyes was different in kind and degree from the one alleged here. Moreover, Reyes was not merely concealing his identity, he attempted to conceal the cause of action by forging a document to show he did not commit medical malpractice. Dr. Gilliam did not conceal her conduct or role in Ms. Romero's treatment, and Plaintiff does not claim that Dr. Gilliam said she was a government employee or that she could not be sued. At most, she concealed the proper legal theory under which Plaintiff could be compensated, but even that action was not pleaded. Under the decided cases, I do not believe the Illinois courts would find this to be concealment of a cause of action.

If *Guebard* is binding law, then Plaintiff's case against the doctor should be dismissed. Guebard had a stronger case than the present one, since she at least alleged that the identity of the physician was affirmatively concealed in the medical records. Here, Plaintiff knew that there was a claim for medical malpractice and knew of Dr. Gilliam's role in the surgery. The malpractice claim was made in June 2002, leaving more than a year to discover that Dr. Gilliam was an independent contractor. With ordinary diligence Plaintiff could have learned that she was required to sue Dr. Gilliam separately. When the exercise of ordinary diligence might discover what had been concealed, fraudulent concealment rules do not toll the statute. *See Harvey v. Harris Trust & Sav. Bank*, 391 N.E.2d 461 (Ill. App. Ct. 1979); *Blonder v. Watts*, 520

N.E.2d 75 (Ill. App. Ct. 1988).[1]

In addition, to the extent that fraudulent concealment occurred, the Plaintiff has alleged with unsatisfactory vagueness that she learned of the independent contractor status in 2005. This was a case in which the four-year statute of repose did not terminate her cause of action until either July 18, 2005 or September 5, 2005. If Plaintiff found out Dr. Gilliam's status before those dates, there was enough time before the repose deadlines to file an amended complaint. Indeed, Plaintiff was informed in January of 2005 that the United States attributed the negligence to someone other than an employee of the United States. This should have triggered an effort to discover the status of Dr. Gilliam. Discovery of the truth prior to the time the statute runs is also a barrier to use of fraudulent concealment. *Evans v. Bachman*, 398 N.E.2d 114, 116 (Ill. App. Ct. 1979).

Based on the manner in which Plaintiff defends it, a better reading of the complaint may be that the VA fraudulently concealed the status of Dr. Gilliam. However that conduct cannot alter Dr. Gilliam's rights to the protection of the statutes of limitation and repose. An equitable estoppel argument requires the defendant to take "active steps to prevent the plaintiff from suing, as by promising the plaintiff not to plead the statute of limitations pending settlement talks, or by concealing evidence from the plaintiff that he needed in order to determine that he had a claim." *Singletary v. Continental Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir. 1993). This does not help Plaintiff because the acts alleged were those of the United States. Equitable tolling

---

[1] Part of the rationale for this rule is the unwillingness of courts to allow persons to rely on the untested assertions of potentially adverse parties. Courts do not often forgive inaction when a person simply trusts the word of someone who may have already done them wrong. A doctor has a fiduciary relationship with a patient, so the patient may be justified in trusting the word of that doctor. The same rule does not apply to a deceased patient's legal representative. *See Fure v. Sherman Hospital*, 380 N.E.2d 1376, 1380 (Ill. App. Ct. 1978). The "trust your doctor rule" also probably does not apply to the doctor-patient relationship when the patient suspects medical malpractice. *See Barratt v. Goldberg*, 694 N.E.2d 604, 608-09 (Ill. App. Ct. 1998).

is only available if "through no fault or lack of diligence on [the plaintiff's] part he was unable to sue before, even though the defendant took no active steps to prevent [the plaintiff] from suing." *Id.* I have already stated that Plaintiff had ample time to discover the possibility that Dr. Gilliam could have been an independent contractor.

The most crucial issue is the statute of repose, which would completely extinguish Plaintiff's rights. Such statutes are substantive and Illinois's statute was enacted to put an end point to claims that were brought too long after the injury occurred, regardless of when it was discovered. In short, if one discovers a medical malpractice injury more than four years after it occurs, there is no cause of action for that injury. *Anderson v. Wagner*, 402 N.E.2d 560, 567-68 (Ill. 1979). In order for fraudulent concealment to toll the statute of repose, "the plaintiff must show 'affirmative acts or representations designed to prevent discovery of the cause of action or to lull or induce a claimant into delaying the filing of [the] claim.'" *Rajcan v. Donald Garvey & Assocs., Ltd.*, 807 N.E.2d 725, 728 (Ill. App. Ct. 2004) (quoting *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 623 (Ill. App. Ct. 1997)). Plaintiff's fraudulent concealment claim still fails here. Even assuming the actions Plaintiff alleges are true, fraudulent concealment is not available when ordinary care could have discovered the concealed information. *See Dancor*, 681 N.E.2d at 624.

Plaintiff argues that escape from the statute of repose allows, "8 years after the date [of injury] where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years . . . ." 735 ILCS 5/13-212(b). Illinois courts hold that the two-year statute of limitation is tolled until the minor is 18, but in any event, the statute of repose is 8 years. *Franklin v. Cernovich*, 679 N.E.2d 98, 101 (Ill. App. Ct. 1997). The period also applies to actions on behalf of a minor beneficiary. *O'Brien v. O'Donoghue*, 686 N.E.2d 688, 691 (Ill.

App. Ct. 1997); *See also Antunes v. Sookhakitch*, 588 N.E.2d 1111 (Ill. 1992) (minor's right to bring medical malpractice claim effectively tolls the general statute of limitations). Ms. Romero's daughter was a minor and did not turn 18 until July, 2006.

It is important to distinguish between claims brought on behalf of the decedent, and those brought on behalf of the surviving spouse or relatives of the deceased.

> A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death.

*Fetzer v. Wood*, 569 N.E.2d 1237, 1242 (Ill. App. Ct. 1991) (quoting *Wyness v. Armstrong World Industries, Inc.*, 546 N.E.2d 568, 571 (Ill. 1989)). Illinois courts have found that the statute of limitations found in Section 13-212 also governs wrongful death suits based on medical malpractice. *Durham v. Michael Reese Hospital Found.*, 627 N.E.2d 67, 70 (Ill. App. Ct. 1993).

Since the claim under the Survival Act would not be considered as brought on behalf of a minor, the four-year statute of repose would still apply to extinguish that claim. With respect to the wrongful death claims, Section 13-212(b) clearly allows the suit brought on behalf of Ms. Romero's daughter to proceed, since she was a minor when the offense occurred and she is within the 8-year limit to file suit. Any other minors would also be allowed to file suit. However, any relatives that were adults at the time of the actions are barred by the 4 year limit.

Lastly, Defendant claims that the certificate of merit required to be filed with a medical malpractice claim is invalid because it does not include the name or address of the physician that completed the document. The language that Defendant relies upon had previously been declared unconstitutional. *See Hunt v. Northwest*, No. 03 C 50250, U.S. Dist. LEXIS 20958 (N.D. Ill.

Nov. 19, 2003). However, at least one state court has found that provision to have been resurrected in a subsequent Public Act. *See Cargill v. Czelatdko*, 818 N.E.2d 898, 905 (Ill. App. Ct. 2004). Since this issue has not been clearly decided by the highest court in the state, I will follow Judge Reinhard and deny this basis for dismissing the motion.

For the aforementioned reasons, Defendant's motion to dismiss Plaintiff's claim against Dr. Gilliam under the Survival Act is granted. Defendant's motion to dismiss Plaintiff's claim under the Wrongful Death Act on behalf of any adult beneficiaries is also granted. Defendant's motion to dismiss Plaintiff's claim under the Wrongful Death Act on behalf of Ms. Romero's daughter and any other beneficiaries who were minors at the time the offenses occurred is denied. Finally, Defendant's motion to dismiss on the basis of Section 2-622 is denied.

                                                   ENTER:

                                                   *James B. Zagel*

                                                   James B. Zagel
                                                 United States District Judge

DATE: March 13, 2007