# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HELEN MONROE, Administrator of the
Estate of REGINA ROMERO, Deceased,

    Plaintiff,

           v.

UNITED STATES OF AMERICA and
MELISSA GILLIAM, M.D.,

    Defendants.

No. 04 C 7358
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Regina Romero died as a result of a mistake during surgery at the Westside Medical

Center, a Veteran's Administration ("VA") hospital in Chicago. Helen Monroe, the

administrator of Romero's estate, has filed a suit pursuant to the Federal Tort Claims Act

("FTCA") and the Illinois Wrongful Death Act against the United States and Dr. Melissa Gilliam

for medical negligence related to Romero's July 18, 2001 cervical biopsy and July 26, 2001

bowel resection procedure, both performed at the VA. Dr. Gilliam performed the cervical biopsy

on Romero. According to the complaint, during the biopsy, Romero's vaginal/uterine wall was

perforated, causing bleeding. The solution applied to control the bleeding entered the abdominal

cavity via the perforation, causing, in turn, peritonitis and bowel perforations. Romero

underwent a bowel resection procedure eight days later to repair the damage, and Dr. Gilliam

assisted in that procedure. A pathology report from the bowel procedure informed Dr. Gilliam

that the bowel was not reconnected after the damaged portion was removed. This condition was

neither detected nor treated. The complaint alleges that Dr. Gilliam negligently (1) removed too

large a specimen during the biopsy, (2) perforated the vaginal/uterine wall during the biopsy, (3)

utilized inappropriate positioning during the biopsy, (4) failed to timely diagnose and appropriately treat the vaginal/uterine wall perforation, (5) introduced a caustic substance to control cervical bleeding, when knowing or when she should have known the substance would enter the abdominal cavity, (6) failed to appropriately anastomose viable bowel, and (7) failed to timely diagnose and treat inappropriately anastomosed bowel. Plaintiff claims that as a result of one or more of Dr. Gilliam's negligent acts or omissions, Romero died on September 5, 2001.

Dr. Gilliam has moved for summary judgment as to Counts III and IV of Plaintiff's Second Amended Complaint, which are the counts that name Dr. Gilliam as a defendant and allege medical negligence stemming from her care and treatment of Romero from July 18, 2001 to September 5, 2001. Plaintiff has joined Dr. Gilliam's motion for summary judgment. The motion asks that I find Dr. Gilliam is a federal employee for purposes of the FTCA and therefore exempt from personal liability for the services she performed within the scope of her employment at the VA. For the following reasons, Dr. Gilliam's motion for summary judgment, joined by Plaintiff, is denied.

**Background**

On September 1, 2000, the VA entered into a one-year contract with the University of Illinois, whereby the University of Illinois ("UIC") agreed to provide the VA with a board-qualified or board-certified gynecologist to perform various services for the VA. On June 14, 2001, the contract was extended for one year. The services included providing gynecological care for VA beneficiaries, assisting in the organization of an in-service training program for the VA's nursing and other medical staff, and providing clinical and didactic instruction to the professional and ancillary staff on the current state of the art and changing concepts in

gynecology. The contract stated that UIC would be responsible for furnishing workers'

compensation, professional liability insurance, income tax withholding, and social security

payments for the personnel provided under the contract. The contract specifically provided that

"[t]he parties agree that the contractor, its employees, agents and subcontractors shall not be

considered VA employees for any purpose."[1]

Dr. Gilliam was the UIC physician who had been assigned to fulfill the requirements of

the contract during the occurrences that lead to the death of Regina Romero in this case.

Notwithstanding the contract language and the contractor exclusion in the FTCA, Dr. Gilliam

and Plaintiff argue that the VA exercised such a degree of control over the performance of Dr.

Gilliam's services that she became a federal employee. The United States argues that the various

indicia of control weigh heavily in favor of finding that the contractor exclusion applies to Dr.

Gilliam and that where, as here, the provisions of a contract are clear, they should be given their

ordinary and plain meaning. *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225

F.3d 876, 879 (7th Cir. 2000).

---

[1]The contract further provided:

> It is expressly agreed and understood that this is a nonpersonal
> services contract, as defined in Federal Acquisition Regulation
> (FAR) 37.101, under which the professional services rendered by
> the Contractor or its health-care providers are rendered in its
> capacity as an independent contractor. The Government may
> evaluate the quality of professional and administrative services
> provided but retains no control over professional aspects of the
> services rendered, including by example, the Contractor's or its
> health-care providers' professional medical judgment, diagnosis, or
> specific medical treatment. The Contractor and its health-care
> providers shall be liable for their liability-producing acts or
> omissions.

**Standard of Review**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the nonmoving party's favor, allowing for all reasonable inferences drawn in a light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**Discussion**

Whether Dr. Gilliam is a federal employee for purposes of the FTCA is a question of federal law. *See Quilico v. Kaplan*, 749 F.2d 480, 483 (7th Cir. 1984); *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995) ("This court has characterized the inquiry of determining whether one is an "employee of the government" under FTCA as a pure question of law and a matter of statutory interpretation."). The FTCA allows a plaintiff to sue the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA defines the term "employee of the government" to include

"officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." *See id*. The term "federal agency" includes "the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States," but it expressly excludes "*any contractor with the United States*." *Id*. (emphasis added). The United States acknowledges that the VA is an executive department of the United States. *See* 38 U.S.C. § 301.

### A. Strict Control Test

The Supreme Court developed the "strict control" test to distinguish between employees and independent contractors. *See Logue v. United States*, 412 U.S. 521, 527 (1973) (federal funding of a local community program); *United States v. Orleans*, 425 U.S. 807, 814 (1976) (use of county jails for federal prisoners). Under that test, an individual's status as either employee or independent contractor "depends upon the amount of governmental agency control of the physical performance of the [individual's] day-to-day activities." *Ezekiel*, 66 F.3d at 901 (*citing Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995)).

Circuit courts applying the "strict control" test have held that physicians in private practice or associated with a private organization under contract to provide medical services at facilities operated by the federal government are not federal employees under the FTCA. *See Carillo v. United States*, 5 F.3d 1302, 1305 (9th Cir. 1993) (contract pediatrician at Madigan Army Medical Center); *Leone v. United States*, 910 F.2d 46, 50 (2d Cir. 1990) (private physician designated by Federal Aviation Administration as medical examiner); *Lilly v. Fieldstone*, 876

F.2d 857, 860 (10th Cir. 1989) (civilian physician contracted as consultant to perform emergency surgery at Army hospital); *Bernie v. United States*, 712 F.2d 1271, 1273 (8th Cir. 1983) (contract physician of federal Indian Health Services); *Wood v. Standard Products Co., Inc.*, 671 F.2d 825, 829-32 (4th Cir. 1982) (contract physician of the United States Public Health Service). Those circuits relied on the need and ethical obligation of physicians to base their treatment decisions on independent judgment, which cannot be controlled by the government. *Ezekiel*, 66 F.3d at 902.

The Seventh Circuit, however, has found the "strict control" test inapplicable when determining whether physicians working in federal medical facilities are federal employees. *Quilico*, 749 F.2d at 485; *Ezekiel*, 66 F.3d at 902. The wisdom of this finding derives from the same reasoning that other circuit courts have used to refuse classifying contract physicians as federal employees, namely the limit of a hospital's ability to control physicians because of physicians' ethical obligation to have "free and complete exercise of [their] medical judgment and skill." *Quilico*, at 483-84 (*quoting* Principles of Medical Ethics § 6, *reprinted in* Opinions and Reports of the American Medical Association Judicial Council, 5 (1977)). As applied to physicians, the "strict control" test would disqualify all physicians from immunity, which is clearly not what Congress intended, especially if the physician is an employee of the government. *Ezekiel*, 66 F.3d at 902; *Quilico*, 749 F.2d at 482 ("such a test . . . would severely curtail the immunity privilege").

Significantly, though, the physicians in *Quilico* and *Ezekiel* were appointed to VA hospitals by federal statutes and were not physicians in private practice or associated with private organizations under contract with a governmental agency to provide medical treatment and

services.  *Quilico*, 749 F.2d at 485; *Ezekiel*, 66 F.3d at 903.  The Seventh Circuit noted in dicta

that even though the "strict control" test may be inapplicable in some instances, the test "may be

a rational approach to determine a physician's status where the physician's provision of services

was pursuant to a contractual agreement and his or her relationship to the government is not

unambiguously governed by statute to be an employer-employee relationship." *Id*.  The facts in

this case seem to present such a situation, as Dr. Gilliam's services were rendered pursuant to a

contract between the VA and UIC, and her relationship to the government is not unambiguously

governed by statute to be an employer-employee relationship.  Thus, even though the contract

purports to render Dr. Gilliam an independent contractor, I will look to the indicia of control held

by the VA to determine whether she should instead be deemed an employee.  *Williams v. U.S.*,

2007 WL 951382, at *10 ("[C]ontract language that defines an individual's employment status is

not controlling as to whether the individual is a government employee for purposes of the

FTCA.").

     B.  Indicia of Control

     The relevant inquiry is whether the performance of Dr. Gilliam's contract was sufficiently

controlled by the VA to render Dr. Gilliam an employee of the VA for purposes of the FTCA.

*Logue v. United States*, 412 U.S. 521, 527 (*citing* Restatement (Second) of Agency § 2 (1958)).

Dr. Gilliam and Plaintiff argue that the VA exercised such a degree of control over Dr.  Gilliam

and the complex medical work she performed that she became a federal employee

notwithstanding the contractor exclusion in the FTCA and the clear contractual language to the

contrary.  The United States argues that the strict control factors weigh in favor of finding that

the contractor exclusion applies to the claims against Dr. Gilliam, or, at the very least, that a question of fact exists as to that determination.[2]

The Restatement (Second) of Agency (1958) lists factors relevant to the indicia of control an employer has over an employee:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

---

[2] In its brief, the United States notes that it is not moving for summary judgment on this issue at this time, but that it will likely do so at the close of discovery.

Due to the nature of the medical profession, these factors are not a perfect indication of the distinction between contractor and employee, but they set forth a sufficient framework for the analysis.[3] The first four factors weigh in favor of finding Dr. Gilliam an independent contractor. Regarding (a), it is uncontroverted that the nature of Dr. Gilliam's work requires discretion to care for her patients and prevents the surrender of control over certain medical details. Indeed, the contract between the VA and UIC states that the VA "retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis or specific medical treatments." Regarding (b), (c), and (d), Dr. Gilliam provides specialized gynecological services to female patients, and these types of physician services cannot be supervised.

Factor (f) is less clear. Dr. Gilliam had worked at the VA pursuant to the contract for less than one year at the time of Romero's operation, and under the contract terms she could remain at the VA for a maximum of three years. However, Dr. Gilliam was employed at the VA for several years before the contract, and this fact indicates that her position at the VA was not episodic and may have been unlikely to terminate at the end of the contract term.

Factors (h) and (j) concern whether the work performed is part of the regular business of the employer. Dr. Gilliam's business of being a physician and providing medical treatment is certainly consistent with that of the VA, a hospital, which makes her seem more like an employee. However, the parties dispute whether or not the VA provided gynecological services prior to the time Dr. Gilliam began working there. The undisputed facts indicate that Dr. Gilliam

---

[3] For example, probably no physician would be classified as an employee under the first four factors, due to the nature of a physician's work, as discussed *supra*.

was responsible for designing clinical templates and creating policies and procedures for the

provisions of medical services to women at the VA, but the facts do no indicate whether or not

the VA provided similar gynecological services before.

Regarding factor (i), the United States relies on the language of the contract that

unequivocally states "[t]he parties agree that the contractor, its employees, agents and

subcontractors shall not be considered VA employees for any purpose." The contract further

provides that "[i]t is expressly agreed and understood that . . . the professional services rendered

by the Contractor or its health-care providers are rendered in its capacity as an independent

contractor." Finally, the contract specified that the University of Illinois would be responsible

for protecting the personnel furnishing services under the contract and, in doing so, was required

to provide the personnel with workers' compensation, professional liability insurance, income

tax withholding, and social security payments. Each of these provisions indicates that the

parties' intent upon entering the contract was to establish an independent contractor relationship.

However, despite the contract's clear language, Plaintiff disputes that Dr. Gilliam's status

at the VA was ever fixed by the contract.[4] Dr. Gilliam worked at the VA prior to the contract

with the UIC, which the parties agree was entered into prior to July 18, 2001 (the date of

Romero's cervical biopsy). Dr. Gilliam's clinical privileges application at the VA indicates that

she was working as a "part-time attending" physician for over a year before the contract, but the

---

[4] Plaintiff's Reply in Support of her Motion for Summary Judgment asserts that "the government has come forward with no evidence that [the contract] specifically applies to [Dr. Gilliam]." This statement is apparently at odds with Dr. Gilliam's Statement of Facts and Memorandum in Support of her Motion for Summary Judgment, which admits that Dr. Gilliam "was the physician from UIC that had been assigned to fulfill the requirements of the contract between UIC and VA during the occurrence in question." This apparent contradiction further suggests that summary judgment is inappropriate at this juncture.

parties dispute the significance of this self-identified categorization. The parties further dispute

when, if ever, Dr. Gilliam's status at the VA changed. The United States claims Dr. Gilliam's

relationship with the VA was changed to an "On-station Sharing Agreement" (a description of an

independent contractor) in July, 2001. But, the Plaintiff and Dr. Gilliam assert that the change

was merely *recommended* in July and was not actually *approved* until August 3, 2001. This

factual dispute is significant given that the procedures performed on Regina Romero occurred

during the time in between these two dates.

Plaintiff's and Dr. Gilliam's arguments with regard to control focus primarily on factor

(e), which they persuasively suggest is the most relevant factor on the list. Indeed this factor

speaks to who "supervise[d] the day-to-day operations" of Dr. Gilliam, which the Supreme Court

has clearly identified as the "key inquiry" under this test. *Lurch v. United States*, 719 F.2d at 333

(10th Cir. 1983). In support of their argument that the VA sufficiently controlled the

instrumentalities of Dr. Gilliam's services, Plaintiff and Dr. Gilliam list the following undisputed

facts: Dr. Gilliam was required to use VA facilities, medications, equipment, and supplies and

was required to follow all applicable VA facility policies, procedures, and regulations while

providing services to patients at the VA. She was under the direction of the VA's Chief of Staff

and VA Dr. Gwen Garmon. Dr. Gilliam had no authority to dispense medication while providing

medical care at the VA facility unless the medication was under the VA's approved formulary.

She had no authority to choose the patients she treated, and the care she provided to those

patients was subject to the same quality, assurance, and morbidity and mortality reviews as every

other VA physician. The VA provided Dr. Gilliam with any assistants she needed to perform her

services, and the only records regarding Dr. Gilliam's patients were the official records

maintained by the VA facility. Dr. Gilliam wore an identification badge with a photograph that

associated her with the VA, and she was on call 24 hours a day, 7 days a week for all gynecological patients coming to the VA. Each of these facts provides evidence that Dr. Gilliam has distinguished herself from the plain meaning of the contract as far as the VA's actual control of her day-to-day activities at the hospital.

### C. Conclusion

Given the difficulties of applying the strict control test to the situation presented here, coupled with the dispute over the applicability of the contract and other VA records, a reasonable fact finder could conclude that Dr. Gilliam qualifies as either an employee or an independent contractor as a matter of law. The United States has met its burden under the summary judgment standard and indicated at the time of briefing that relevant facts to the issue presented here were yet unknown. Accordingly, summary judgment that Dr. Gilliam is a federal employee cannot be granted. I order a hearing to proceed before the court to further address the relevant factors and disputes identified above.

ENTER:

James B. Zagel
United States District Judge

DATE: March 21, 2008